IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RALPH E. VANDERHALL** | * | |
| | * | |
| v. | * | Civil Case No. GLR-14-2725 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Ralph E. Vanderhall, who is appearing *pro se,* did not file a motion for summary judgment, but he did file supporting documentation along with his complaint and again in response to the Commissioner's Motion for Summary Judgment.[1]  I have considered all of that documentation and the Commissioner's pending Motion for Summary Judgment. [ECF Nos. 1, 15, 19]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Loc. R. 105.6 (D. Md. 2014). For the reasons set forth below, I recommend that the Commissioner's motion be denied, the decision of the Commissioner be reversed in part, and the case be remanded pursuant to sentence four of 42 U.S.C. 405(g).

---

[1] After the Commissioner filed her Motion for Summary Judgment on March 9, 2015, a Rule 12/56 letter was mailed to Mr. Vanderhall, advising him of the potential consequences of failure to oppose the Commissioner's motion. [ECF No. 16]. Mr. Vanderhall did not respond. However, upon review of the file, it appeared that Mr. Vanderhall was using a post office box that differed from his official address on file with the Court. To provide him with a full opportunity to respond to the Commissioner's motion, a second Rule 12/56 letter was sent to his post office box, and the Commissioner re-sent other pertinent documents to the post office box. [ECF Nos. 17, 18]. After receiving those documents, on April 22, 2015, Mr. Vanderhall appeared at the courthouse to file documents in opposition to the Commissioner's motion. [ECF No. 19].

Mr. Vanderhall protectively filed his applications for benefits on April 2, 2009, alleging a disability onset date of December 31, 2007. (Tr. 288-97). His applications were denied initially and on reconsideration. (Tr. 192-99, 201-04). Three hearings were held in Mr. Vanderhall's case. After the first hearing, on July 12, 2010, at which Mr. Vanderhall was represented by counsel, an Administrative Law Judge ("ALJ") issued an opinion denying benefits. (Tr. 31-62, 153-69). On April 27, 2012, the Appeals Council ("AC") remanded the case for further evaluation. (Tr. 147-52). A second hearing, at which Mr. Vanderhall was again represented by counsel, was held on November 14, 2012, after which the ALJ again denied benefits. (Tr. 63-115, 170-86). However, the AC remanded the case a second time for additional evaluation. (Tr. 187-91). Before the third hearing, at Mr. Vanderhall's request, his counsel withdrew his representation. (Tr. 284). As a result of a typographic error, the notice Mr. Vanderhall received from the agency indicated that his third hearing would be held on January 6, 2014, at 3:00 a.m.[2] (Tr. 266). Mr. Vanderhall appeared for his hearing at that time, only to learn that the building was closed. After visiting his physician for an increase of his medication due to escalating "anxiety level and paranoia," he returned for his hearing, which commenced that same afternoon at 3:22 P.M. (Tr. 116-42). He was not represented by counsel at the third hearing. *Id.* Following that hearing, the ALJ decided for a third time that Mr. Vanderhall was not disabled. (Tr. 12-23). This time, the AC denied review, making the ALJ's 2014 decision the final, reviewable decision of the agency. (Tr. 1-3).

The ALJ found that, during the relevant time frame, Mr. Vanderhall suffered from the severe impairments of bipolar disorder with psychotic features, panic disorder with agoraphobia,

---

[2] A subsequent "Notice of Hearing Reminder," sent three months after the original notice, correctly listed the hearing time as 3:00 p.m. (Tr. 285).

and obsessive-compulsive disorder. (Tr. 15). Despite these impairments, the ALJ determined that Mr. Vanderhall retained the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to work that is simple as defined in the Dictionary of Occupational Titles as SVP levels 1 and 2. He is also limited to routine and repetitive tasks in a work environment free of fast-paced production requirements, which is defined as constant activity with work tasks performed sequentially in rapid succession. The claimant can further perform work involving only simple-work related decisions, with few, if any, work place changes. In addition, he is limited to no more than occasional interaction with the general public, co-worker [sic] and supervisors.

(Tr. 18). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Mr. Vanderhall could perform, and that he was not, therefore, disabled. (Tr. 22-23).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, while substantial evidence supports some portions of the ALJ's decision, the ALJ's analysis of Mr. Vanderhall's physical impairment of back pain was inadequate. Accordingly, I recommend remand.

At step one, the ALJ found in Mr. Vanderhall's favor that he had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15). At step two, the ALJ found the severe mental impairments listed above. (Tr. 15). The ALJ also assessed Mr. Vanderhall's physical complaints, including hypertension, degenerative disc disease, prostate cancer, sleep

apnea, hyperlipidemia, glaucoma, and polysubstance abuse, but found those impairments to be non-severe. (Tr. 15-16).

At step three, the ALJ noted that the claimant did not establish that any mental or physical listings had been met or equaled. (Tr. 16-17). In considering Mr. Vanderhall's RFC, the ALJ provided a summary of Mr. Vanderhall's allegations from his testimony at a prior hearing and from his written submissions. (Tr. 18-19). The ALJ also analyzed the medical evidence derived from treatment notes from Mr. Vanderhall's treating physicians at the Veterans' Administration (VA) and Change Health Systems, Inc. (Tr. 19-20). The ALJ noted Mr. Vanderhall's extensive participation in group therapy sessions and activities at the VA. (Tr. 20). As for opinion evidence, the ALJ assigned "moderate weight" to the opinions of two non-examining physicians who reviewed his physical records in 2009, and determined that he had no severe physical impairments. (Tr. 20). The ALJ assigned "minimum weight" to the opinions of two non-examining mental health professionals, because the ALJ determined that Mr. Vanderhall's mental health impairments were more severe than they found. *Id.* The ALJ also assigned "minimum weight" to the opinion of Mr. Vanderhall's treating physician, Dr. Cantor, who found, in the ALJ's view, overly severe restrictions. (Tr. 21). The ALJ ultimately assigned "significant weight" to the consultative examination conducted on December 29, 2013, where the examining doctor found some psychological difficulties, but not to the extent of Mr. Vanderhall's self-report. (Tr. 21).

Continuing at step four, the ALJ found that Mr. Vanderhall could not perform his past relevant work as a machine operator or short order cook. (Tr. 21). At step five, the ALJ posed two hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 139-41). Ultimately, the ALJ determined that Mr. Vanderhall's

RFC matched one of the hypotheticals he had posed. (Tr. 17-18). The VE cited several jobs, including laundry worker (medium exertional level), linen room attendant (medium exertional level), final inspector (light exertional level), and final assembler (light exertional level), in response to that hypothetical, and the ALJ relied on that VE testimony in his opinion. (Tr. 22, 140-41).

The function of this Court is not to review Mr. Vanderhall's claims *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also* 42 U.S.C. § 405(g). I am unable to recommend that finding here. The most significant error lies in the ALJ's failure to evaluate opinion evidence from Dr. Jose Corvera regarding Mr. Vanderhall's back impairment. On August 25, 2011, Dr. Corvera opined that Mr. Vanderhall "is able to work, but on a limited duty basis only. The veteran is not able to do any heavy lifting and not able to do any frequent bending." (Tr. 908). Although the ALJ's opinion refers to the fact that Mr. Vanderhall had x-rays of his lumbar spine in August 2011, the opinion makes no reference to Dr. Corvera's opinion that Mr. Vanderhall has restrictions in lifting and bending. Dr. Corvera's recommended restrictions are echoed in the more stringent March 17, 2014, opinion of Dr. Peter Gregg, who opined that Mr. Vanderhall was "unable to bend, lift, kneel, push/pull." (Tr. 1144). Dr. Gregg's opinion post-dated the ALJ's opinion, but was reviewed by the AC. While the AC is not required to make any express evaluation of new evidence as long as the evidence is considered, due to the fact that the ALJ had failed to evaluate Dr. Corvera's opinion, the additional evidence from Dr. Gregg mandates

some explanation of the Commissioner's evaluation of Mr. Vanderhall's back-related complaints. I further note that there is additional medical evidence, in the 2011-2014 time frame, suggesting that Mr. Vanderhall was suffering increasing problems with his back. *See, e.g.*, (Tr. 1057) (January 2013 notes evaluating for chronic low back pain with repeated flares that "have occurred more recently over the years"); (Tr. 916) (reflecting notes of chronic pain in March 2012 and August 2012). Thus, the ALJ's exclusive reliance on the two State agency medical examiners' opinions from 2009, suggesting that Mr. Vanderhall had no severe physical impairment, was insufficient without additional analysis explaining his rejection of the more recent records and his determination that Mr. Vanderhall's back pain caused no impact on his ability to perform work at any exertional level.

I note that the lack of adequate analysis of the allegedly worsening back impairment was compounded by the fact that Mr. Vanderhall's testimony at his 2014 hearing was largely incoherent. Mr. Vanderhall had been awake since before 3 a.m. that day, and had received a large dose of mental health medication from his treating physician sometime prior to the hearing. Whether as a result of sheer exhaustion or medication side effects, it is clear that Mr. Vanderhall was unable to meaningfully participate in his hearing, and he was not represented by counsel. His condition rendered it impossible for the ALJ to glean necessary information in the course of the hearing:

> Q: When, when you did Clorox, what kind of stuff did you do?
>
> A: We just did like boxes, I think it was a conveyor, it was boxes of some sort. But I don't, you know, I don't know, this is, I got, I got some more medication today, she increased my meds. She increased my meds and I don't know about anything, but I'm pretty tired, but I'm just tired of this, that I'm going through all this over and over and then it's like 3:00, you know, 3:00 in the, 3:00 in the morning, you know, and I couldn't get no sleep, I can't sleep, I couldn't, just get more anxiety, you know, and tired, I'm tired.

(Tr. 126-27).

>Q:  Well, I'm talking about, this is like 2005, for instance, there's a group called Compass Group U.S.A., Incorporated, do you know what you did with them?
>
>    . . .
>
>A:  Cook, I mean, it might have been a cook, cook, I don't know. I don't know. Calm down, calm down, need to use the restroom anyway. I need to use the restroom. This stuff is, this mess is making my stomach –

(Tr. 128).

>Q: Okay. Well, how about, even regardless of the getting another rep, if, want to make sure we have, what is the best phone number to reach you?
>
>A:  The one, the one that's on there, 44, the one that's on, the one that, the one that they called, they sent me to, they called the, the machine, whatever.
>
>Q. Okay. So you don't know your number off hand?

(Tr. 129).

>Q:  How often do you, what kind of problems are you experiencing when you have, what are the problems that you experience? I mean, is it a loss of concentration, loss of focus?
>
>A:  Think, think I just want to go with what's on there, think I'm going to stay, think I'm going to stay . . . I, the doctor gave me stuff, I don't remember all the stuff, I can't remember, then I got extra medicine today, you know.
>
>Q: Uh-huh.
>
>A: And, hell, I, excuse me, whatever, but just, I'm not going to dig a hole, tell you the wrong thing and then it's not, like I did with, one time that would tell me my jobs and I'm following, you know. I'm just telling him, maybe, you know, because he was saying it, and that's on the, that's on the record. Then they said that I was telling him. I don't, I don't, I don't want to go through all this.

(Tr. 136-37).

Although Mr. Vanderhall was able to communicate to the ALJ that he wears a back brace, goes to treatment, and is supposed to see an orthopedic surgeon, his description of his symptoms and treatment lacked precision and detail. *See* (Tr. 132-35); *e.g,.* (Tr. 135) (when asked if he had difficulty sitting, "Yeah. I don't know, you know, it's, you're asking something that I don't, I know it bothers me. I just, I just get up. Then sometime it might not bother me for

7

maybe an hour or sometimes not bother me 15 minutes. But that's, I don't, I don't, I don't really feel comfortable in this environment."). Overall, the ALJ's characterization of Mr. Vanderhall's participation in his hearing was entirely unfounded. *See, e.g.*, (Tr. 16) ("The claimant has interacted appropriately at all examinations of record, as well as at the hearing."); (Tr. 16-17) ("Additionally, during the hearing, he exhibited no significant deficits in memory, attention, or concentration and his testimony was generally responsive, coherent and without any apparent lapses of attention."). On remand, the ALJ should ensure that Mr. Vanderhall is either represented or is able to convey information in a manner allowing adequate inquiry into his claims. In recommending remand, I express no opinion as to whether the ALJ's ultimate conclusion that Mr. Vanderhall is not entitled to benefits is correct or incorrect.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Defendant's Motion for Summary Judgment, [ECF No. 15]; REVERSE IN PART the decision of the Commissioner; REMAND the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendation; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de*

*novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: May 5, 2015                                    /s/
                                                     Stephanie A. Gallagher
                                                     United States Magistrate Judge